**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EDGARDO HERRERA,

                Petitioner,

     v.

MARTIN D. BITER, Warden,

                Respondent.

Case No. CV 13-7965 SS

**MEMORANDUM DECISION AND ORDER**

## I.

### INTRODUCTION

Effective October 17, 2013, Edgardo Herrera ("Petitioner"), a California state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition").[1]  (Dkt. No. 1).  On March 3, 2014,

---

[1]     "When a prisoner gives prison authorities a habeas petition or other pleading to mail to court, [pursuant to the mailbox rule,] the court deems the petition constructively 'filed' on the date it is signed[,]" Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010); Houston v. Lack, 487 U.S. 266, 276 (1988), which in this case was October 17, 2013.

Respondent filed an Answer to the Petition with an accompanying Memorandum of Points and Authorities ("Ans. Mem."). (Dkt. No. 12). On December 22, 2015, Petitioner filed a First Amended Petition for Writ of Habeas Corpus, and he filed the operative Second Amended Petition ("SAP") effective January 21, 2016. (Dkt. Nos. 24, 38-39, 41). On March 11, 2016, Respondent filed a Supplemental Answer to the SAP as well as a memorandum of points and authorities in support of the Supplemental Answer ("Supp. Ans. Mem."). (Dkt. No. 46). Respondent has also lodged documents from Petitioner's state proceedings, including the Clerk's Transcript ("CT") and Reporter's Transcript ("RT"). (Dkt. Nos. 13, 17, 31). Petitioner filed a Reply on April 8, 2016. (Dkt. No. 48).

The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 9, 14-15). For the reasons discussed below, the Petition is DENIED and this action is DISMISSED WITH PREJUDICE.

## II.

### PRIOR PROCEEDINGS

On December 7, 2010, a Los Angeles County Superior Court jury convicted Petitioner of three counts of second-degree robbery in violation of California Penal Code ("P.C.") § 211 and also found it to be true that a principal personally used a firearm during the robberies within the meaning of P.C. § 12022(a)(1) and that Petitioner committed the robberies for the benefit of, at the direction of, or in association with a criminal street gang with

1    the specific intent to promote, further or assist in criminal
2    conduct by gang members within the meaning of P.C. § 186.22(b).[2]
3    (CT 403-05, 409-11; RT 4805-08).  On January 15, 2011, Petitioner
4    admitted he had suffered a prior "strike" conviction under
5    California's Three Strikes Law, P.C. §§ 667(b)-(i) & 1170.12(a)-
6    (d), and a prior serious felony conviction within the meaning of
7    P.C. § 667(a)(1).  (CT 414; RT 5101-03).  On March 10, 2011, the
8    trial court sentenced Petitioner to a prison term of 30 years.  (CT
9    421-24, 426-27; RT 5406-07).

10

11       Petitioner appealed his convictions and sentence to the
12   California Court of Appeal (2d App. Dist., Div. 7), which affirmed
13   the judgment in an unpublished decision filed August 9, 2012.
14   (Lodgments A1, A5-A7).  On September 11, 2012, Petitioner filed a
15   petition for review in the California Supreme Court, which denied
16   the petition on October 31, 2012.  (Lodgments B1-B2).

17

18       Effective July 31, 2014, Petitioner filed a petition for writ
19   of habeas corpus in Los Angeles County Superior Court, which denied
20   the petition on November 20, 2014.  (Lodgment C1; Dkt. No. 34-1 at
21   39-40).  Petitioner thereafter filed a petition for writ of habeas
22   corpus in the California Court of Appeal, which denied the petition
23   on January 14, 2015.  (Dkt. No. 34-1 at 42).  Effective February
24   10, 2015, Petitioner filed a habeas corpus petition in the

25

26   _____

27   [2]   Petitioner was tried with co-defendants Jose Cisneros and
     Nicholas Rodriguez.  (See, e.g., RT 4).  The jury was unable to
28   reach verdicts as to Cisneros and Rodriguez, and a mistrial was
     declared as to them.  (RT 4813; Lodgment A1 at 2).

1   California Supreme Court, which denied the petition on July 8,
2   2015.  (Dkt. Nos. 34-1, 37).

3

4                              **III.**

5                      **FACTUAL BACKGROUND**

6

7       The following facts, taken from the California Court of
8   Appeal's unpublished decision on direct review, have not been
9   rebutted with clear and convincing evidence and are therefore
10  presumed correct.  28 U.S.C. § 2254(e)(1); Slovik v. Yates, 556
11  F.3d 747, 749 n.1 (9th Cir. 2009).

12

13          In October 2009[,] Mario Frias, Jesus Nunez,
14      Arturo Frias, and Victor Vasquez were walking to a
15      party when they were approached by two men.  One
16      asked Mario Frias where he was from, and he
17      responded, "Nowhere," signifying that he was not a
18      gang member.  The man demanded that Mario Frias give
19      him the contents of his pockets.  Mario Frias
20      refused and slapped the man's hand away when he
21      reached for Frias's pocket.  The man hit Mario Frias
22      in the head with a pistol.  He went through Nunez's
23      pockets and hit Nunez in the head with the gun.

24

25          Mario Frias ran across the street, but two men
26      jumped from a nearby car, demanded his possessions,
27      then attacked him when he claimed to have nothing
28      to give them.  [Petitioner] was the driver of the

                                4

1    car; he remained in the car and gave orders to the
2    assailants, including an instruction to be sure to take
3    the men's possessions. [Petitioner] was holding a shiny,
4    rounded object that was shaped like a bat and that made
5    a sound like a gun being loaded. The Frias brothers and
6    Nunez were beaten and robbed. Three of the attackers
7    left in the car [Petitioner] drove.

9   (Lodgment A1 at 2).

11                                **IV.**

12                         **PETITIONER'S CLAIMS**

14   The Petition raises seven grounds for federal habeas relief.
15   In Ground One, Petitioner contends he was denied due process of
16   law because there was insufficient evidence to prove his identity
17   as one of the robbers. (SAP at 5).3  In Ground Two, Petitioner
18   alleges he was denied due process of law because there was
19   insufficient evidence to prove the gang enhancements since the
20   prosecution failed to establish a "pattern of criminal gang
21   activity" and the gang's "primary activities." (Id.). In Ground
22   Three, Petitioner asserts the trial court denied him due process
23   of law when it instructed the jury that it could consider evidence
24   of Petitioner's gang activity for the purpose of deciding identity,
25   which Petitioner claims was tantamount to a directed verdict that
26   Petitioner committed the robberies. (Id. at 5-6). In Ground Four,

27   ───────────────
28   3 The Court refers to the SAP as if it was consecutively numbered
     in accordance with the Court's electronic docket (Dkt. No. 41).

Petitioner alleges: (a) the trial court violated the Confrontation Clause by admitting gang expert Detective Eduardo Aguirre's testimony that Petitioner had told other officers he was a Lott 13 gang member named Fatty; and (b) admission of Detective Aguirre's expert testimony deprived Petitioner of due process of law. (Id. at 6-16). In Ground Five, Petitioner maintains that Detective Aguirre employed unduly suggestive photographic identification procedures to induce Arturo Frias to identify Petitioner as one of the robbers. (Id. at 17-33). In Ground Six, Petitioner alleges he received ineffective assistance of counsel when his trial counsel failed to object that Detective Aguirre's testimony violated the Confrontation Clause and failed to object to the unduly suggestive photographic identification procedures. (Id. at 33). In Ground Seven, Petitioner asserts that his appellate counsel rendered ineffective assistance by failing to raise Grounds Four through Six. (Id.).

**V.**

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011). Under AEDPA's deferential standard, a federal court may grant habeas relief only if the state court adjudication was contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, or was based upon

6

an unreasonable determination of the facts.  Id. at 100 (citing 28 U.S.C. § 2254(d)).  "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt[.]"  Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations and internal quotation marks omitted).

Petitioner raised Grounds One through Three in his petition for review to the California Supreme Court, and he raised Grounds Four through Seven in his habeas corpus petition to the California Supreme Court, which denied the petitions without comment or citation to authority.  (Lodgments B1-B2; Dkt. Nos. 34-1, 37).  The Court "looks through" the California Supreme Court's silent denials to th43e last reasoned decision as the basis for the state court's judgment.  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); Cannedy v. Adams, 706 F.3d 1148, 1159 (9th Cir. 2013) ("[W]e conclude that Richter does not change our practice of 'looking through' summary denials to the last reasoned decision – whether those denials are on the merits or denials of discretionary review." (footnote omitted)), as amended, 733 F.3d 794 (9th Cir. 2013).  Therefore, the Court will consider the California Court of Appeal's reasoned opinion addressing Grounds One through Three,[4] and the Los Angeles

---

[4]  In rejecting Ground One on the merits, the California Court of Appeal noted that Petitioner did not brief his contention that "'the Cognitive Deficiencies of the One Victim Who Did Identify [Petitioner]' warrant reversal," and declined to further consider

1   County Superior Court's opinion addressing Grounds Four and Six.[5]

2   Berghuis v. Thompkins, 560 U.S. 370, 380 (2010).  However, because

3   no state court has provided a reasoned decision as to Ground Seven,

4   this Court must conduct "an independent review of the record" to

5   determine whether the decision to deny those claims was contrary

6   to, or an unreasonable application of, clearly established federal

7   law.  Murray v. Schriro, 745 F.3d 984, 996-97 (9th Cir. 2014);

8   Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013).  Finally, the

9   Court will address Ground Five de novo.[6]  See Thompkins, 560 U.S.

———————————————

that contention.  (Lodgment A1 at 4 n.2).  Petitioner briefly
mentions witness Arturo Frias's "mental and cognitive abilities"
in raising Ground One before this Court.  (SAP at 5).  Respondent
contends that this portion of Ground One is procedurally defaulted.
(Ans. Mem. at 5-8).  However, the Court does not consider
Petitioner's stray comment as raising a separate argument.  Rather,
the Court considers Ground One to raise a single claim that there
was insufficient evidence to prove his identity as one of the
robbers (see SAP at 5), a claim the California Court of Appeal
rejected on the merits.  In any event, the Court retains the
discretion to deny claims on the merits even if the claims are
alleged to be procedurally defaulted.  See Flournoy v. Small, 681
F.3d 1000, 1004 n.1 (9th Cir. 2012) ("While we ordinarily resolve
the issue of procedural bar prior to any consideration of the
merits on habeas review, we are not required to do so when a
petition clearly fails on the merits."); Franklin v. Johnson, 290
F.3d 1223, 1232 (9th Cir. 2002) ("[C]ourts are empowered to, and
in some cases should, reach the merits of habeas petitions if they
are . . . clearly not meritorious despite an asserted procedural
bar.").

5   Respondent asserts that Grounds Four through Seven are untimely.
(Supp. Ans. Mem. at 4-16).  However, the Court will not address
this contention because the Court retains the discretion to address
and deny claims on the merits even if the claims are alleged to be
untimely.  See Cooper v. Calderon, 274 F.3d 1270, 1275 n.3 (9th
Cir. 2001) (per curiam) (denying petition on merits rather than
remanding to consider equitable tolling); Van Buskirk v. Baldwin,
265 F.3d 1080, 1083 (9th Cir. 2001) (court may properly deny
petition on merits rather than reaching "the complex questions
lurking in the time bar of the AEDPA.").

6   The Superior Court, citing In re Waltreus, 62 Cal. 2d 218 (1965),
rejected Ground Five because "[t]he suggestiveness of the lineup

at 390 ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review[.]"); Norris v. Morgan, 622 F.3d 1276, 1290 (9th Cir. 2010) (affirming denial of habeas corpus petition when claim failed even under de novo review); Frantz v. Hazey, 533 F.3d 724, 735-37 (9th Cir. 2008) (en banc) (a federal habeas court can review constitutional issues de novo before performing a § 2254(d)(1) analysis).[7]

## VI.

### DISCUSSION

**A. Petitioner Is Not Entitled To Habeas Relief On His Insufficient Evidence Claims**

In Ground One, Petitioner contends there was insufficient evidence to prove his identity as one of the robbers because witnesses provided inconsistent testimony, a suggestive

_____

procedure was raised on appeal and cannot be raised again [in a] petition for writ of habeas corpus." (Dkt. No. 34-1 at 39); see also Carter v. Giurbino, 385 F.3d 1194, 1198 (9th Cir. 2004) ("Waltreus holds that issues actually raised and rejected on appeal cannot be raised anew in a state petition for writ of habeas corpus."). Yet on direct appeal, Petitioner only challenged the alleged suggestive lineup procedures in relation to his insufficient evidence claim. (See Lodgments A1, A5, B1). He did not separately argue that the allegedly tainted lineup was itself a due process violation. (Id.).

[7]   The Court emphasizes that for the reasons discussed in this Memorandum Decision and Order, the pending SAP would be denied even if entirely subject to de novo review. Thompkins, 560 U.S. at 390.

1   identification procedure was employed, and Arturo Frias, the only

2   witness to identify Petitioner, had limited cognitive abilities.

3   (SAP at 5).   In Ground Two, Petitioner alleges there was

4   insufficient evidence to support the gang enhancements because only

5   one of the two predicate acts presented to the jury was committed

6   by a member of Alcoholics Causing Ruckus ("ACR"), and there was

7   insufficient evidence to determine ACR's primary activities.

8   (Id.).  Petitioner's claims are without merit.

9

10      **1.   California Court of Appeal's Opinion**

11

12      The California Court of Appeal rejected Petitioner's challenge

13   to the sufficiency of the evidence of identity, stating:

14

15          Viewed in the light most favorable to the

16      prosecution, we conclude that the evidence is sufficient

17      to sustain [Petitioner's] conviction.  At trial, Arturo

18      Frias positively identified [Petitioner] as the driver

19      of the car involved in the robberies.  He had previously

20      identified [Petitioner] as the driver from a photographic

21      six-pack in the days after the robbery.  Moreover,

22      [Petitioner] implicitly acknowledged his involvement in

23      the crimes: in jail, three months after the robbery, he

24      wrote a letter to an associate expressing confidence that

25      "most likely I[']m getting the gun enhan[ce]ment

26      dismissed [be]cause I had no gun."  He wrote that a

27      private investigator was going to prompt "that fool" —

28      the victim who had identified him — "to say that I hit

                                    10

him up in a party a month before the rob[b]ery and hopefully he does because I was busted a month before and if he does say that I['] m going to ask for them to remove his testimony and if that happen[]s then I'll be firme [be]cause he['] s the only one who I.D. [identified] me.  The 2 other vict[i]ms never saw me so I think I should be ok."  This evidence supports the jury's verdict in this case.

*     *     *

The circumstances of the identification of [Petitioner] were addressed at trial, and the jury heard evidence from Arturo Frias about suggestive and prejudicial statements made by the officer conducting the photographic lineup.  The jury did not conclude that the circumstances of the identification compromised that identification.  "In the instant case, 'there is in the record the inescapable fact of in-court eyewitness identification.  That alone is sufficient to sustain the conviction.'  Next, when the circumstances surrounding the identification and its weight are explored at length at trial, where eyewitness identification is believed by the trier of fact, that determination is binding on the reviewing court.  Third, the evidence of a single witness is sufficient for proof of any fact."  Beyond this identification evidence, [Petitioner's] own words established that he was present and involved in the robberies and indicated consciousness of guilt.  We cannot say that the evidence was insufficient to

1    establish    that    [Petitioner]    participated    in    the
2    robberies.

3

4  (Lodgment A1 at 3-5 (citation omitted)).

5

6    The California Court of Appeal also determined there was
7  sufficient evidence to support the gang enhancements, stating:

8

9        The evidence was sufficient to support the true
10       finding on the gang enhancement allegation.  [¶]  The
11       prosecution attempted to establish the requisite pattern
12       of criminal activity with respect to ACR with evidence
13       of crimes committed by people named Andrew Rodriguez and
14       Roger Mendoza.  [Petitioner] points to testimony of gang
15       expert witness Detective Eduardo Aguirre on cross-
16       examination in which Aguirre acknowledged that Rodriguez
17       had maintained he was a member of an associated gang,
18       Lott 13, and that another officer, purportedly the source
19       of information that Rodriguez was an ACR member, had
20       actually written down on an investigation card (a "gang
21       hard card") that Rodriguez claimed to be a member of Lott
22       13.  Aguirre, however, also testified that he understood
23       Rodriguez to be an ACR member based on having spoken with
24       Rodriguez and speaking to people who know him.
25       Regardless of whether Rodriguez admitted to being a
26       member of ACR, the jury could reasonably conclude that
27       he was an ACR member.  Moreover, because the offense
28       being tried may also constitute one of the predicate

offenses for the gang enhancement statute, even if the Rodriguez evidence were to be considered insufficient, [Petitioner] still has not shown that there was insufficient evidence of two predicate acts to support the gang enhancement allegation.

Next, [Petitioner] contends that there was insufficient evidence that criminal acts were one of the primary activities of ACR because Aguirre only listed a series of criminal acts the gang had been involved in as a response to the prosecutor's question asking him to state the primary activities of ACR. [Petitioner] claims the evidence was deficient because Aguirre did not state that criminal activity was one of the gang's primary activities, but we find this argument unpersuasive. Aguirre was asked, "What are the primary activities of ACR?" and responded, "ACR, over the years, they've been involved in shootings, robberies, stolen vehicles, gun possessions, sales of narcotics, vandalism." We decline to attach talismanic significance to the words "primary activities": the jury was entitled to understand this response as an enumeration responsive to the specific question concerning the gang's primary activities.

* * *

Here, . . . Aguirre testified that he was familiar with the gang and that he had investigated shootings and robberies that ACR members had committed, and he identified a number of specific criminal offenses in

13

1    response to a question about the gang's primary

2    activities. This testimony was supported by the evidence

3    of the charged offense, a coordinated street robbery

4    involving multiple ACR members. Second, Aguirre

5    testified about one ACR member's conviction for gun

6    possession and another member's conviction for robbery.

7    There was sufficient evidence to support the gang

8    enhancement allegation.

10 (Lodgment A1 at 5-7 (citations omitted)).

12    **2.  Analysis**

14    To review the sufficiency of the evidence in a habeas corpus proceeding, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis omitted); Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012) (per curiam); see also Coleman v. Johnson, 132 S. Ct. 2060, 2065 (2012) (per curiam) ("[T]he only question under Jackson is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality."). "'[A] reviewing court must consider all of the evidence admitted by the trial court,' regardless [of] whether that evidence was admitted erroneously," McDaniel v. Brown, 558 U.S. 120, 131 (2010) (per curiam) (citation omitted), all evidence must be considered in the light most favorable to the prosecution, Lewis v. Jeffers, 497 U.S.

1   764, 782 (1990); Jackson, 443 U.S. at 319, and if the facts support

2   conflicting inferences, reviewing courts "must presume – even if

3   it does not affirmatively appear in the record – that the trier of

4   fact resolved any such conflicts in favor of the prosecution, and

5   must defer to that resolution." Jackson, 443 U.S. at 326; Cavazos

6   v. Smith, 132 S. Ct. 2, 6 (2011) (per curiam). Furthermore, under

7   AEDPA, federal courts must "apply the standards of [Jackson] with

8   an additional layer of deference." Juan H. v. Allen, 408 F.3d

9   1262, 1274 (9th Cir. 2005); Boyer v. Belleque, 659 F.3d 957, 964-

10  65 (9th Cir. 2011). These standards are applied to the substantive

11  elements of the criminal offense under state law. Jackson, 443

12  U.S. at 324 n.16; Boyer, 659 F.3d at 964; see also Johnson, 132 S.

13  Ct. at 2064 ("Under Jackson, federal courts must look to state law

14  for the substantive elements of the criminal offense, but the

15  minimum amount of evidence that the Due Process Clause requires to

16  prove the offense is purely a matter of federal law." (citation

17  and quotation marks omitted)).

18

19          a.   *Robbery*

20

21          Petitioner does not challenge the sufficiency of the evidence

22  to prove that a robbery was committed,[8] but instead argues there

23  _____

24  [8]  California law defines robbery as "the taking of personal
    property in the possession of another against the will and from

25  the person or immediate presence of that person accomplished by
    means of force or fear and with the specific intent permanently to

26  deprive such person of such property." People v. Clark, 52 Cal.
    4th 856, 943 (2011) (citation and internal quotation marks

27  omitted); P.C. § 211; see also People v. Magee, 107 Cal. App. 4th
    188, 195 n.4 (2003) ("The elements of robbery are (1) the victim

28  had possession of property of some value, (2) the property was

                                  15

1    was insufficient evidence for the jury to conclude he was one of

2    the robbers. (SAP at 5). The Court disagrees with this contention.

3

4         The jury heard evidence that on October 3, 2009, Mario Frias

5    ("Mario"), Arturo Frias ("Arturo"), Jesus Nunez and Victor Vazquez

6    were walking down a street when they were confronted by two men,

7    one of whom was armed with a pistol. (RT 1228-33, 1561, 1565-66,

8    1830-32, 1846, 2143). The armed man asked the group where they

9    were from, which Mario and Nunez understood as asking if they were

10   "gang member[s] or something," and Mario and Nunez responded

11   "nowhere." (RT 1231-32, 1246, 1565). The man then told Mario

12   "[l]et me have whatever you have in your pockets" and reached for

13   Mario's pockets, but Mario slapped the man's hands away and the

14   man hit Mario in the head with the pistol. (RT 1231, 1233). Mario

15   ran across the street to distract the men from his brothers. (RT

16   1233-34). At that point, Mario saw a green Toyota Camry pull up.

17   (RT 1234-35). Two men jumped out of the car and approached Mario

18   while the driver remained inside and told the other men to "[m]ake

19   sure you get their stuff." (RT 1235, 1250, 1845). The two men

20   demanded Mario give them what he had in his pockets and, after he

21   refused, they beat him, knocked him to the ground, and took his

22   ────────────────────

23   taken from the victim or his or her personal presence, (3) the
     property was taken against the will of the victim, (4) the taking
24   was by either force or fear, and (5) the property was taken with
     the specific intent to permanently deprive the victim of the
25   property."). All robberies are second degree unless otherwise
     specified in P.C. § 212.5(a) (first-degree robberies include, among
26   other things, robbery of an inhabited dwelling house) or P.C. §
     212.5(b) ("Every robbery of any person while using an automated
27   teller machine or immediately after the person has used an
     automated teller machine and is in the vicinity of the automated
28   teller machine is robbery of the first degree."). P.C. § 212.5(c).

1   wallet.  (RT 1236-38).  While this was happening, Arturo and Nunez

2   were attacked by the two men who initially approached them, and

3   Arturo's wallet was taken.  (RT 1238-39, 1565-67, 1843-44, 1849-

4   50).  The attackers got into the Camry, which drove away.  (RT

5   1239-40, 1263, 2149).  Arturo observed the Camry's driver during

6   the robbery and identified Petitioner as that person.[9]  (RT 1845-

7   46, 1851-52, 2108, 2120-21, 2183-84, 3029-30).

8

9       Additionally, while incarcerated, Petitioner wrote several

10  letters that were discovered in a search of his cell.  (RT 1556-

11  59).  In one of these letters, which was dated December 30, 2009,

12  Petitioner described a plan to discredit Arturo's testimony and

13  stated that Arturo was the only one to identify Petitioner, and

14  that if his testimony was removed Petitioner the "2 other two

15  victims never saw me[,] so I think that I should be ok."  (CT 270).

16  Petitioner also noted that "most likely [he was] getting the gun

17  enhancement dismissed [because] I had no gun."  (Id.).  In a

18  subsequent undated letter, Petitioner urged friends to manufacture

19  evidence to exonerate him of the gang enhancement by "show[ing]

20  that we [ACR and Lott 13] don't get along."  (CT 272-73).

21

22      Based on Arturo's identification of Petitioner and

23  Petitioner's "own words establish[ing] that he was present and

24  involved in the robberies and indicat[ing] consciousness of

25  guilt[,]" the California Court of Appeal held sufficient evidence

26

27  ──────────────

    [9]  Arturo referred to the vehicle as a Camaro, but identified the

28  picture of the Camry as being "exactly the car that night."  (RT
    1845, 1255-56, 2133).

1  supported the jury's conclusion that Petitioner participated in
2  the robberies.  (Lodgment A1 at 3-5).  Petitioner disputes this
3  conclusion, arguing the evidence against him was insufficient
4  because there were inconsistencies in the witnesses' description
5  of the robbers and the only witness to identify Petitioner – Arturo
6  – had cognitive difficulties.  (SAP at 5).  However, "evidence is
7  not rendered insufficient simply because there are discrepancies
8  in the eyewitnesses' descriptions of the robber[s]."[10]  United
9  States v. Ginn, 87 F.3d 367, 369 (9th Cir. 1996).  Rather, "it is
10 the responsibility of the jury – not the court – to decide what
11 conclusions should be drawn from evidence admitted at trial[,]"
12 Smith, 132 S. Ct. at 4; Matthews, 132 S. Ct. at 2152, and the Court
13 "'must respect the province of the jury to determine the
14 credibility of witnesses, resolve evidentiary conflicts, and draw
15 reasonable inferences from proven facts by assuming that the jury
16 resolved all conflicts in a manner that supports the verdict.'"
17 Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997) (quoting Walters
18 v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995)).  Here, the issues
19 surrounding Arturo's identification of Petitioner were thoroughly
20 explored during Petitioner's trial and were extensively argued to
21 the jury, which nevertheless convicted Petitioner.[11]  (See, e.g.,

---

[10] Petitioner also complains that Arturo's identification was based
on an impermissibly suggestive pretrial identification procedure.
(SAP at 5).  As discussed below, this claim is without merit.  In
any event, as noted above, in reviewing the sufficiency of the
evidence, the Court considers all of the evidence admitted,
including evidence allegedly erroneously admitted.  Brown, 558 U.S.
at 131.

[11] Arturo also identified Rodriguez and Cisneros as involved in
the robbery, but the jury did not convict these two defendants.
(RT 1832, 1843-48, 4813).  This does not undermine the sufficiency
of the evidence against Petitioner.  See United States v.

1  RT 1811-14, 1826, 1873-74, 1876, 1882, 1885-86, 1899-1900, 2103-

2  04, 2108-10, 2114-19, 2438-96, 2702-63, 2768-77, 3009-12, 3013-23,

3  3947-4007).   Under  these  circumstances,  the  state  court's

4  determination that there was sufficient evidence to support the

5  jury's conclusion that Petitioner participated in the robberies

6  was not contrary to, or an unreasonable application of, clearly

7  established federal law. Jackson, 443 U.S. at 319; Boyer v.

8  Chappell, 793 F.3d 1092, 1101 (9th Cir. 2015), cert. denied, 136

9  S. Ct. 1446 (2016); see also Ngo v. Giurbino, 651 F.3d 1112, 1114

10 (9th Cir. 2011) ("'Circumstantial evidence and inferences drawn

11 from it may be sufficient to sustain a conviction.'" (citations

12 omitted)); Bruce v. Terhune, 376 F.3d 950, 957-58 (9th Cir. 2004)

13 (Jackson standard satisfied based on victim's testimony since there

14 was no indication testimony was "physically impossible and simply

15 could not have occurred as described"); United States v. McClendon,

16 782 F.2d 785, 790 (9th Cir. 1986) (single eyewitness's in-court

17 identification of McClendon as present in getaway car was

18 sufficient to support McClendon's robbery conviction); United

19 States v. Larios, 640 F.2d 938, 940 (9th Cir. 1981) ("The testimony

20 of one witness . . . is sufficient to uphold a conviction."); Oliva

21 v. Hedgpeth, 600 F. Supp. 2d 1067, 1087 (C.D. Cal. 2009)

22 ("'Identification of the defendant by a single eyewitness may be

23 sufficient to prove the defendant's identity as the perpetrator of

24 _____

McClendon, 782 F.2d 785, 790 (9th Cir. 1986) (where eyewitness
identified two men – McClendon and Higgins – as present in getaway
25 car, and jury convicted McClendon but acquitted Higgins, "the fact
that the jury was less convinced of Higgins' guilt may be curious,
26 [but] it does not undermine our finding that a 'rational trier of
fact could have found the essential elements of the crime beyond a
27 reasonable doubt' from the evidence presented against McClendon."
(quoting Jackson, 443 U.S. at 319)).

28

1  a crime.'" (citations omitted)), _affirmed by_, 375 F. App'x 697 (9th
2  Cir. 2010).

3

4          b.   Gang Enhancement

5

6      The California Street Terrorism Enforcement and Prevention
7  Act ("STEP Act"), P.C. §§ 186.20 et seq., is a statutory scheme
8  enacted to further the "eradication of criminal activity by street
9  gangs[.]"  P.C. § 186.21 (2010). The STEP Act "imposes various
10 punishments  on  individuals  who  commit  gang-related  crimes  —
11 including a sentencing enhancement on those who commit felonies
12 'for the benefit of, at the direction of, or in association with
13 any criminal street gang.'"[12] People v. Prunty, 62 Cal. 4th 59, 67
14 (2015) (quoting P.C. § 186.22(b); italics omitted).  The STEP Act
15 defines a "criminal street gang" as "(1) . . . an ongoing
16 association of three or more persons with a common name or common
17 identifying sign or symbol; (2) [that] has as one of its primary
18 activities the commission of one or more of the criminal acts
19 enumerated in the statute;[13] and (3) includes members who either

---

[12]  To warrant a gang enhancement, California law requires the
prosecutor prove two elements beyond a reasonable doubt.  First,
the prosecutor must show that Petitioner committed a felony "for
the benefit of, at the direction of, or in association with any
criminal street gang[.]"  P.C. § 186.22(b)(1) (2010); Emery v.
Clark, 643 F.3d 1210, 1214 (9th Cir. 2011) (per curiam).  Second,
the prosecutor must show that Petitioner committed the crime "with
the specific intent to promote, further, or assist in any criminal
conduct by gang members[.]"  P.C. § 186.22(b)(1) (2010); Emery,
643 F.3d at 1214.
[13]  At the time of Petitioner's offenses, the enumerated criminal
acts consisted of:  assault with a deadly weapon or by means of
force likely to produce great bodily injury; robbery; unlawful
homicide  or  manslaughter;  the  sale,  possession  for  sale,
transportation,  manufacture,  offer  for  sale,  or  offer  to

20

individually or collectively have engaged in a 'pattern of criminal gang activity' by committing, attempting to commit, or soliciting two or more of the enumerated offenses (the so-called 'predicate offenses')[14] during the statutorily defined period."[15]   People v. Hernandez, 33 Cal. 4th 1040, 1047 (2004) (footnotes added); People v. Sengpadychith, 26 Cal. 4th 316, 319-20 (2001).

In Ground Two, Petitioner alleges there was insufficient evidence to support his gang enhancements because the prosecution did not demonstrate the predicate acts or primary activities

---

manufacture controlled substances; shooting at an inhabited dwelling or occupied motor vehicle; discharging or permitting the discharge of a firearm from a motor vehicle; arson; the intimidation of witnesses and victims; grand theft; grand theft of any firearm, vehicle, trailer, or vessel; burglary; rape; looting; money laundering; kidnapping; mayhem; aggravated mayhem; torture; felony extortion; felony vandalism; carjacking; the sale, delivery, or transfer of a firearm; possession of a pistol, revolver, or other firearm capable of being concealed upon the person; threats to commit crimes resulting in death or great bodily injury; theft and unlawful taking or driving of a vehicle; prohibited possession of a firearm; carrying a concealed firearm; and carrying a loaded firearm.  P.C. § 186.22(e)(1-25), (31-33) (2010).

[14]  At the time of Petitioner's offenses, a "pattern of criminal gang activity" included the enumerated criminal acts listed in note 13 above as well as: felony theft of an access card or account information; counterfeiting, designing, using, or attempting to use an access card; felony fraudulent use of an access card or account information; unlawful use of personal identifying information to obtain credit, goods, services, or medical information; and wrongfully obtaining Department of Motor Vehicles documentation.  P.C. § 186.22(e) (26-30) (2010).

[15]  To fall within the statutorily defined period, at least one of the predicate offenses must have occurred "after the effective date" of the STEP Act, September 26, 1988, and the last of the predicate offenses must have occurred "within three years after a prior offense."  P.C. § 186.22(e); People v. Loeun, 17 Cal. 4th 1, 8 (1998).

1   necessary to prove that ACR was a criminal street gang.  (SAP at

2   5).  The Court disagrees.

3

4        Expert witness Detective Eduardo Aguirre testified he has been

5   a police officer for a little over 19 years, during which time he

6   has worked extensively in gang units.[16]  (RT 2188-89).  He has also

7   participated in a 40-hour course on gang subcultures and various

8   seminars regarding gangs.  (RT 2188, 2192, 2779-81).  During his

9   employment, Detective Aguirre has investigated over 500 murders

10  and thousands of shootings and robberies, and he has arrested gang

11  members for various crimes.  (RT 2189-90).  Detective Aguirre talks

12  to gang members on a daily basis, talks to gang investigators in

13  his unit and in nearby cities to keep up on gang intelligence, and

14  is out in the community daily to keep up with gang trends and

15  rivalries.  (RT 2190-91).  Detective Aguirre estimated he has

16  talked to thousands of gang members about gang culture.  (Id.).

17  Detective Aguirre testified he is familiar with Alcoholics Causing

18  Ruckus or ACR, which began as a tagging crew but "elevated their

19  status to an actual gang" approximately four or five years before

20  trial.   (RT 2192-95, 2800).   Detective Aguirre stated he had

21  investigated shootings and robberies that involved ACR members.

22  (RT 2195).  Detective Aguirre indicated that ACR has approximately

23  10 documented members, but are "at least 25 members deep."  (RT

24

25

26  [16] Detective Aguirre explained he was originally hired by the City
    of Compton, and worked in its gang unit for eight years.  (RT 2188-
27  89).  He then joined the Los Angeles County Sheriff's Department,
    and had spent about eight years in its gang unit at the time of
28  trial.  (RT 2189).

2195, 2801).  Detective Aguirre described ACR's claimed territory,[17] indicated ACR has a common hand sign – the letters ACR – and identified ACR's rivals.  (RT 2196-98, 2803-05, 2819).  In response to a question regarding ACR's primary activities, Detective Aguirre responded "ACR, over the years, they've been involved in shootings, robberies, stolen vehicles, gun possessions, sales of narcotics, [and] vandalism."  (RT 2198; see also RT 2806).  The prosecution also presented "evidence of crimes committed by people named Andrew Rodriguez and Roger Mendoza."[18]  (Lodgment A1 at 5; see also RT 2198-99).  Additionally, Detective Aguirre opined that Petitioner was an ACR gang member known as Fatty.  (RT 2199-2201).  Detective Aguirre based this opinion on items he found in Petitioner's home as well as letters recovered from Petitioner's jail cell.  (RT 2200-02).

Petitioner initially contends the evidence was insufficient to support his conviction because "[o]nly one of two predicate acts was committed by a member of ACR," as Andrew Rodriguez was a Lott 13 gang member and not an ACR member.[19]  (SAP at 5).  This contention

[17]  Detective Aguirre explained that ACR's territory is within the territory claimed by Lott 13, a gang that allows ACR to operate in its territory.  (RT 2195-97).

[18]  Based on certified court records, Detective Aguirre testified that Rodriguez's crime was gun possession and Mendoza's crime was robbery.  (RT 2198-99).  Detective Aguirre identified Rodriguez as associated with ACR, and noted that he committed his crime with a Lott 13 gang member.  (Id.).  Detective Aguirre described Mendoza as an ACR gang member who committed his crime with a Lott 13 gang member.  (RT 2199, 2423).

[19]  The SAP does not specify the predicate act to which Petitioner refers, but he argued on direct review that Andrew Rodriguez was a Lott 13 member, not an ACR member, and the Court assumes he intends the same argument here.  (See Lodgment A5 at 41; Lodgment B1 at 11-12; Lodgment A1 at 5-6).  To the extent Petitioner intends to

fails. First, although there was evidence presented that Andrew Rodriguez was a Lott 13 gang member, Detective Aguirre testified he worked on Rodriguez's case and that in speaking to Rodriguez and people who knew him, Rodriguez "was actually ACR[,]" (RT 2807-10), and the jury was entitled to rely on such testimony. Smith, 132 S. Ct. at 4; Matthews, 132 S. Ct. at 2152; Jones, 114 F.3d at 1008; see also Hernandez, 33 Cal. 4th at 1047-48 ("[T]o prove the elements of the criminal street gang enhancement, the prosecution may . . . present expert testimony on criminal street gangs."). Second, even setting aside the Rodriguez evidence, there was sufficient evidence "establishing a 'pattern of criminal gang activity,'" since "the charged offense may serve as a predicate offense." Ratliff v. Hedgepeth, 712 F. Supp. 2d 1038, 1061 (C.D. Cal. 2010); Sengpadychith, 26 Cal. 4th at 323; People v. Gardeley, 14 Cal. 4th 605, 621-25 (1997), disapproved of in part on other grounds, People v. Sanchez, 63 Cal. 4th 665 (2016); see also People v. Loeun, 17 Cal. 4th 1, 11 (1998) ("[T]he prosecution can establish the requisite 'pattern' exclusively through evidence of crimes committed contemporaneously with the charged incident.").

Petitioner also asserts that the prosecution improperly relied on Detective Aguirre's testimony to establish ACR's primary activities because Detective Aguirre provided no evidence to

---

raise any other argument beyond that discussed herein, his conclusory contentions are insufficient to warrant habeas corpus relief. See Greenway v. Schriro, 653 F.3d 790, 804 (9th Cir. 2011) (A "cursory and vague claim cannot support habeas relief."); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

support his testimony. (SAP at 5; Reply at 10). However, as the California Court of Appeal noted, Detective Aguirre based his testimony on, inter alia, his investigations of shootings and robberies involving ACR members as well as "evidence of the charged offense, a coordinated street robbery involving multiple ACR members" and Rodriguez's and Mendoza's convictions. (Lodgment A1 at 7; see also RT 2195-99). Detective Aguirre's testimony is more than sufficient to establish ACR's primary activities. See Sengpadychith, 26 Cal. 4th at 324 (expert testimony can provide sufficient proof of gang's primary activities); Gardeley, 14 Cal. 4th at 620 (Detective's testimony regarding gang and its primary activities, which was based on "conversations with the defendants and with other [gang] members, his personal investigations of hundreds of crimes committed by gang members, as well as information from his colleagues and various law enforcement agencies[,]" was sufficient evidence of gang's primary activities); People v. Margarejo, 162 Cal. App. 4th 102, 107-08 (2008) (gang expert's testimony regarding defendant's gang's primary activities provided sufficient evidence to support jury's conclusion that defendant's gang met the statutory definition of a criminal street gang); People v. Martinez, 158 Cal. App. 4th 1324, 1330 (2008) (Gang expert's "eight years dealing with the gang, including investigations and personal conversations with members, and reviews of reports suffices to establish the foundation for his testimony" regarding the gang's primary activities); People v. Vy, 122 Cal. App. 4th 1209, 1226 (2005) ("[P]roof of the 'primary activities' element was satisfied through testimony by a police gang expert, Detective Ta. He gave significant expert testimony that [the gang]

1  was engaged in criminal actions that constituted predicate crimes

2  under the gang statute."); People v. Duran, 97 Cal. App. 4th 1448,

3  1465 (2002) ("The testimony of a gang expert, founded on his or

4  her conversations with gang members, personal investigation of

5  crimes committed by gang members, and information obtained from

6  colleagues in his or her own and other law enforcement agencies,

7  may be sufficient to prove a gang's primary activities.").

8

9      Accordingly, the state court's rejection of Ground Two was

10 neither contrary to, or an unreasonable application of, clearly

11 established federal law.

12

13 **B.   Petitioner Is Not Entitled To Habeas Relief On His**

14    **Instructional Error Claim**

15

16     Instructional error warrants federal habeas relief only if

17 the "'instruction by itself so infected the entire trial that the

18 resulting conviction violates due process[.]'" Waddington v.

19 Sarausad, 555 U.S. 179, 191 (2009) (citation and internal quotation

20 marks omitted); Middleton v. McNeil, 541 U.S. 433, 437 (2004) (per

21 curiam).  The instruction must be more than merely erroneous.

22 Instead, Petitioner must show there was a "reasonable likelihood

23 that the jury has applied the challenged instruction in a way that

24 violates the Constitution." McNeil, 541 U.S. at 437 (citations

25 and internal quotation marks omitted); Sarausad, 555 U.S. at 190-

26 91; see also Cupp v. Naughten, 414 U.S. 141, 146 (1973) ("Before a

27 federal court may overturn a conviction resulting from a state

28 trial in which [an allegedly faulty] instruction was used, it must

be established not merely that the instruction is undesirable, erroneous or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."). Further, "[i]t is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (citation omitted); Sarausad, 555 U.S. at 191. Where the alleged error is the failure to give an instruction, the burden on the Petitioner is "'especially heavy.'" Sarausad, 555 U.S. at 191 (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)). Moreover, if a constitutional error occurred, federal habeas relief remains unwarranted unless the error caused prejudice, i.e., unless it had a substantial and injurious effect or influence in determining the jury's verdict. Hedgpeth v. Pulido, 555 U.S. 57, 61-62 (2008) (per curiam); Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).

In Ground Three, Petitioner argues that the trial court unconstitutionally directed a verdict against him on the robbery counts by instructing the jury that it could conclude that he was one of the robbers "on the sole basis that Petitioner's alleged membership in a gang established his identity in the offenses." (SAP at 6). Specifically, Petitioner challenges the trial court's modification of model jury instruction CALCRIM No. 1403 to allow the jury to consider evidence of gang activity in deciding "[t]he identity of the person who committed the" robberies. (Augmented Reporter's Transcript (Nov. 29, 2010) ("ART") at 15-16; CT 357). \\

**1.   Background**

The California Court of Appeal found the following facts underlying this claim:

> The jury was instructed with a version of CALCRIM No. 1403 that directed jurors that they could consider evidence of gang activity for the limited purpose of deciding intent, purpose, and knowledge relative to the gang enhancement allegation; motive; or "The identity of the person who committed the crimes."[20]  The jury was authorized to use the evidence to evaluate witness credibility and when it considered the facts and information relied upon by an expert witness in reaching an opinion.  The jury was instructed not to consider the

---

[20]    The modified version of CALCRIM No. 1403 stated:

> You may consider evidence of gang activity only for the limited purpose of deciding whether the defendant acted with the intent, purpose, and knowledge that are required to prove the gang-related allegations, or the defendant had a motive to commit the crimes charges, or the identity of the person who committed the crimes.  [¶]  You may also consider this evidence when you evaluate the credibility or believability of witnesses and when you consider the facts and information relied on by an expert witness in reaching his or her opinion.  [¶]   You may not consider this evidence for any other purpose.  You may not conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crime.

(ART at 15-16; CT 357).

1        gang evidence as evidence of a bad character or

2        disposition, or for any other purpose.

3

4    (Lodgment A1 at 9 (footnote added)).

5

6        **2.   California Court of Appeal's Opinion**

7

8        The California Court of Appeal rejected Petitioner's challenge

9    to the modified instruction, stating:

10

11           There is no reasonable likelihood that the jury

12       improperly applied the instruction as [Petitioner]

13       suggests.  This limiting instruction informed the jury

14       that it could consider the gang evidence when it

15       determined the question of identity; it did not compel

16       a conclusion of identity if the jury found [Petitioner]

17       to be a gang member.  Particularly when read in

18       conjunction with CALCRIM No. 315, which instructed the

19       jury on all the considerations involved in evaluating

20       witness identifications, we find no reasonable

21       likelihood that the jury relied upon this instruction to

22       use the gang evidence improperly.

23

24    (Lodgment A1 at 9-10).

25

26

27

28

1        **3.   Analysis**

2

3        A trial judge "may not direct a verdict for the State, no
4   matter how overwhelming the evidence." Sullivan v. Louisiana, 508
5   U.S. 275, 277 (1993); see also United States v. Martin Linen Supply
6   Co., 430 U.S. 564, 572-73 (1977) (A "trial judge is prohibited from
7   entering a judgment of conviction or directing the jury to come
8   forward with such a verdict, regardless of how overwhelmingly the
9   evidence may point in that direction." (citations omitted)).
10  Rather, the Sixth and Fourteenth Amendments "require criminal
11  convictions to rest upon a jury determination that the defendant
12  is guilty of the crime with which he is charged, beyond a reasonable
13  doubt." United States v. Gaudin, 515 U.S. 506, 509-10 (1995); see
14  also In re Winship, 397 U.S. 358, 364 (1970) ("[T]he Due Process
15  Clause protects the accused against conviction except upon proof
16  beyond a reasonable doubt of every fact necessary to constitute
17  the crime with which he is charged."). "Jury instructions
18  relieving States of this burden violate a defendant's due process
19  rights." Carella v. California, 491 U.S. 263, 265 (1989) (per
20  curiam); Francis v. Franklin, 471 U.S. 307, 326 (1985); see also
21  Evanchyk v. Stewart, 340 F.3d 933, 939 (9th Cir. 2003) ("It is a
22  violation of due process for a jury instruction to omit an element
23  of the crime.").

24

25      Here, contrary to Petitioner's contention, the modified
26  version of CALCRIM 1403 did not direct a verdict against Petitioner
27  on the robbery counts or otherwise lessen the prosecution's burden
28  of proof. Rather, as the California Court of Appeal recognized,

the "limiting instruction informed the jury that it could consider the gang evidence when it determined the question of identity; it did not compel a conclusion of identity if the jury found [Petitioner] to be a gang member." (Lodgment A1 at 9). Instead, the jury was instructed, inter alia, on the elements of robbery and that the prosecution has the burden of proving those elements beyond a reasonable doubt. (ART 7-10; CT 351-52). The jury was also specifically instructed on how to evaluate eyewitness testimony, and particularly that "[t]he People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime. If the People have not met this burden, you must find the defendant not guilty." (RT 4230-32; CT 376-77). Accordingly, the jury was properly instructed regarding the prosecution's burden of proof, Victor v. Nebraska, 511 U.S. 1, 14-15 (1994); Lisenbee v. Henry, 166 F.3d 997, 999 (9th Cir. 1999), and nothing in CALCRIM 1403 altered that burden. As "[a] jury is presumed to follow its instructions," Weeks v. Angelone, 528 U.S. 225, 234 (2000); Zafiro v. United States, 506 U.S. 534, 540-41 (1993), and to attend to the particular language of an instruction, United States v. Olano, 507 U.S. 725, 740 (1993); Franklin, 471 U.S. at 324 n.9, Petitioner has not demonstrated a constitutional violation. Bruce, 376 F.3d at 955-56; see also Drayden v. White, 232 F.3d 704, 714-15 (9th Cir. 2000) (A jury instruction on how to evaluate evidence did not shift the prosecution's burden of proof in any way. "The jury was separately and explicitly instructed that the prosecution bore the burden of proving every element of the offense beyond a reasonable doubt. Thus, the jury was properly instructed on the burden of proof, and there was no error.").

1  As such, the state court's denial of Ground Three was not

2  contrary to, or an unreasonable application of, clearly established

3  federal law.

4

5  **C.   Petitioner Is Not Entitled To Habeas Relief On His**

6  **Confrontation Clause And Due Process Claims**

7

8  In Ground Four(a), Petitioner contends the admission of gang

9  expert Detective Aguirre's testimony that Petitioner admitted to

10 other non-testifying police investigators that he was a Lott 13

11 gang member violated Petitioner's right to confront the witnesses

12 against him. (SAP at 6-16). In Ground Four(b), Petitioner argues

13 the trial court denied him due process of law when it admitted

14 Detective Aguirre's "[irrelevant] and prejudicial" expert

15 testimony.[21] (Id.). Petitioner's contentions are without merit.[22]

16 _____

17 [21] Petitioner also suggests he was denied equal protection of the
   law, but does not explain why this is so, and his vague, conclusory

18 and unsupported assertion is manifestly insufficient to warrant
   habeas corpus relief. Greenway, 653 F.3d at 804; James, 24 F.3d

19 at 26.

20 [22] A federal court, in conducting habeas review, is limited to
   deciding whether a state court decision violates the Constitution,

21 laws or treaties of the United States. 28 U.S.C. § 2254(a);
   Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (per curiam); McGuire,

22 502 U.S. at 67-68. Federal habeas corpus relief "does not lie for
   errors of state law." Jeffers, 497 U.S. at 780; see also Wilson

23 v. Corcoran, 562 U.S. 1, 5 (2010) (per curiam) ("[I]t is only
   noncompliance with federal law that renders a State's criminal

24 judgment susceptible to collateral attack in the federal courts."
   (emphasis in original)). Therefore, to the extent Petitioner's

25 claim can be read as alleging that admission of the gang expert's
   testimony violated state law (see SAP at 9-11), such a claim – or

26 any other state law claim – is not cognizable in this proceeding
   and will not be further addressed. See Williams v. Borg, 139 F.3d

27 737, 740 (9th Cir. 1998) (Federal habeas relief is available "only
   for constitutional violation, not for abuse of discretion.").

28

**1.    Los Angeles County Superior Court's Opinion**

The Los Angeles County Superior Court did not specifically discuss the Confrontation or Due Process Clauses, but denied Petitioner's claims, stating:

> [Detective] Eduardo Aguirre properly relied on the Petitioner['.]s admission of gang membership in forming his opinion that the Petitioner was a gang member and the crime was committed for the benefit of the gang. [Cal. Evid. Code § 801(b)] permits an expert to rely on information made known to him, whether admissible or not, that is of a type that may reasonably [be] relied upon by an expert in forming his opinion. The Petitioner's admission of gang membership to a police officer is that type of information. In addition[,] the Petitioner's admission of gang membership is admissible hearsay pursuant to [Cal. Evid. Code §] 1220.

(Dkt. No. 34-1 at 39).[23]

\\

\\

---

[23] Although the Superior Court did not specifically discuss the federal aspects of the claims Petitioner raised, the Court presumes the Superior Court denied his Confrontation Clause and Due Process claims on the merits, see Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits — but that presumption can in some limited circumstances be rebutted."), and Petitioner has not rebutted this presumption.

33

1       **2.   Analysis**

2

3           a.   Confrontation Clause

4

5       The Sixth Amendment's Confrontation Clause provides that "[i]n

6   all criminal prosecutions, the accused shall enjoy the right . . .

7   to be confronted with the witnesses against him. . . ."   U.S.

8   Const., Amend. VI.   The Confrontation Clause bars "admission of

9   testimonial statements of a witness who did not appear at trial

10  unless he was unavailable to testify, and the defendant . . . had

11  a prior opportunity for cross-examination."   <u>Crawford v.

12  Washington</u>, 541 U.S. 36, 53-54 (2004); <u>Davis v. Washington</u>, 547

13  U.S. 813, 821 (2006).   The Confrontation Clause applies only to

14  "'witnesses' against the accused, i.e., those who 'bear

15  testimony.'"   <u>Crawford</u>, 541 U.S. at 51 (citation omitted); <u>Davis</u>,

16  547 U.S. at 823-24.   "'Testimony,' in turn, is typically a solemn

17  declaration or affirmation made for the purpose of establishing or

18  proving some fact."   <u>Crawford</u>, 541 U.S. at 51 (citation and some

19  internal punctuation omitted); <u>Davis</u>, 547 U.S. at 824.   As the

20  <u>Davis</u> court explained:

21

22          [a] critical portion of [<u>Crawford</u>'s] holding . . . is

23          the phrase "testimonial statements."   Only statements of

24          this sort cause the declarant to be a "witness" within

25          the meaning of the Confrontation Clause.   It is the

26          testimonial character of the statement that separates it

27          from other hearsay that, while subject to traditional

28

34

1    limitations upon hearsay evidence, is not subject to the

2    Confrontation Clause.

3

4    Davis, 547 U.S. at 821 (citation omitted).  Thus, nontestimonial

5    statements do not implicate the Confrontation Clause.  Giles v.

6    California, 554 U.S. 353, 376 (2008); Whorton v. Bockting, 549 U.S.

7    406, 420 (2007).  Moreover, the Confrontation Clause "does not bar

8    the use of testimonial statements for purposes other than

9    establishing the truth of the matter asserted." Crawford, 541 U.S.

10   at 59 n.9; see also United States v. Wahchumwah, 710 F.3d 862, 871

11   (9th Cir. 2013) (Crawford "applies only to testimonial hearsay,

12   and 'does not bar the use of testimonial statements for purposes

13   other than establishing the truth of the matter asserted.'"

14   (citation omitted)).   Additionally, a Confrontation Clause

15   violation is subject to harmless error analysis.  Delaware v. Van

16   Arsdall, 475 U.S. 673, 684 (1986).   A Confrontation Clause

17   violation is harmless, and does not justify habeas relief, unless

18   it had substantial and injurious effect or influence in determining

19   the jury's verdict.  Brecht, 507 U.S. at 623; Ocampo v. Vail, 649

20   F.3d 1098, 1114 (9th Cir. 2011).

21

22      Here, Petitioner complains his Confrontation Clause rights

23   were violated when gang expert Detective Aguirre testified that

24   Petitioner admitted to several officers that he was Fatty from Lott

25   13.  (RT 2421-22).  This contention is without merit.  "The Supreme

26   Court has not clearly established that the admission of out-of-

27   court statements relied on by an expert violates the Confrontation

28   Clause."  Hill v. Virga, 588 F. App'x 723, 724 (9th Cir. 2014),

1    cert. denied, 135 S. Ct. 2355 (2015); see also Lopez v. Davey, 2015

2    WL 4776434, *18 (N.D. Cal. 2015) ("There is no clearly established

3    Supreme Court authority that admission of hearsay statements relied

4    on by an expert violates the Confrontation Clause."); Castillo v.

5    Lewis, 2015 WL 10401594, *13 (C.D. Cal. 2015) ("[T]o date the

6    Supreme Court has not held that the use of testimonial hearsay

7    evidence as a basis for expert opinion violates the Confrontation

8    Clause."), report and recommendation adopted by, 2016 WL 837891

9    (C.D. Cal. 2016); Watts v. Brazelton, 2013 WL 2317793, *11 (C.D.

10   Cal. 2013) ("[N]o Supreme Court case establishe[s] that the

11   admission of expert opinion based on hearsay violates the

12   Confrontation Clause."). Accordingly, the California court's

13   rejection of Petitioner's Confrontation Clause claim cannot have

14   been contrary to, or an unreasonable application of, clearly

15   established federal law. See Wright v. Van Patten, 552 U.S. 120,

16   126 (2008) ("Because our cases give no clear answer to the question

17   presented, . . . it cannot be said that the state court

18   unreasonabl[y] appli[ed] clearly established Federal law.  Under

19   the explicit terms of § 2254(d)(1), therefore, relief is

20   unauthorized." (citation and internal quotation marks omitted;

21   brackets in original)); Carey v. Musladin, 549 U.S. 70, 77 (2006)

22   ("Given the lack of holdings from this Court. . . , it cannot be

23   said that the state court 'unreasonabl[y] appli[ed] clearly

24   established Federal law.'" (citation omitted)); Stenson v. Lambert,

25   504 F.3d 873, 881 (9th Cir. 2007) ("Where the Supreme Court has

26   not addressed an issue in its holding, a state court adjudication

27   of the issue not addressed by the Supreme Court cannot be contrary

28

1  to, or an unreasonable application of, clearly established federal

2  law.").

3

4      Even if this was not the case, the Court need not address

5  whether Detective Aguirre's disputed testimony violated the

6  Confrontation Clause because any possible error was harmless.

7  Brecht, 507 U.S. at 623.   In particular, despite Petitioner's

8  admission, Detective Aguirre never opined that Petitioner was a

9  Lott 13 gang member.   Instead, based on items recovered from

10  Petitioner's home and jail cell,[24] Detective Aguirre concluded

11  Petitioner was a member of the ACR gang, not Lott 13.[25]   (RT 2199-

12  2200).   Although Detective Aguirre did opine that Petitioner's

13  gang moniker was Fatty, he based this opinion primarily on evidence

14  he recovered from Petitioner's home and a letter Petitioner signed,

15  all of which referred to him as Fatty from ACR.   (CT 270-71; (RT

16  ─────────────────────

17  [24] These items included a letter found in Petitioner's jail cell
which he signed "Edgar Faty" and "Still Alcoholic."  (CT 270-71;
18  RT 2200).   Petitioner signed another letter Edgar "Still an
Alcoholic catching respect."  (RT 2201).  Additionally, a mousepad
19  and a business card recovered from Petitioner's home both said
"Fatty ACR."  (RT 2201-02).  Moreover, Detective Aguirre identified
20  Petitioner in a photograph in which Petitioner was "throwing up
ACR, hand signs."  (RT 2208).   Detective Aguirre also testified
21  about ACR graffiti with three different monikers, including
"Fatty," which Detective Aguirre stated was a "roster" signifying
22  that ACR was "present" in the area and that "Fatty" – i.e.,
Petitioner – was "active."  (RT 2430-32).   Finally, in another
23  letter Petitioner wrote while he was in jail, Petitioner urged his
friends to manufacture evidence that would exonerate him on the
24  pending gang enhancement by showing that "we," i.e., ACR members,
do not get along with Lott 13 members.  (CT 272-73).
25  [25] Detective Aguirre explained that Lott 13 and ACR are allies.
26  (RT 2422, 2425-26, 2786; see also RT 2435-37).   Detective Aguirre
also testified that ACR members have sometimes moved on to Lott
27  13, and Lott 13 allows ACR to operate in its territory.  (RT 2195,
28  2197, 2797).

2200-02).  Thus, because Detective Aguirre did not rely on Petitioner's Lott 13 admission, and as Petitioner's statement that he was Fatty was cumulative of other evidence admitted at trial, Petitioner cannot show that admission of Detective Aguirre's disputed testimony had a substantial and injurious effect or influence in determining the jury's verdict.  Brecht, 507 U.S. at 623; see also Woods v. Sinclair, 764 F.3d 1109, 1125-26 (9th Cir. 2014) (Given the cumulative nature of the improperly admitted statements, petitioner "cannot establish prejudice as a result of the Confrontation Clause violation, and he is not entitled to habeas relief on this issue."), cert. denied, 135 S. Ct. 2311 (2015); Whelchel v. Washington, 232 F.3d 1197, 1210-11 (9th Cir. 2000) (Confrontation Clause error was harmless when improperly admitted evidence was "merely cumulative").

        b.   Due Process

     "Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court."  Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (quoting 28 U.S.C. § 2254(d)).  "The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process" and "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."  Id.  Therefore, the state court's rejection of Petitioner's due process claim cannot

be contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1); Moses v. Payne, 555 F.3d 742, 761-62 (9th Cir. 2009).

Even setting aside the "clearly established federal law" issue, Petitioner's due process claim is without merit. "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005), as amended, 421 F.3d 1154 (9th Cir. 2005). "'The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process.'" Holley, 568 F.3d at 1101 (citations omitted); Gonzalez v. Knowles, 515 F.3d 1006, 1011 (9th Cir. 2008). In the context of a claim of improperly-admitted evidence, "[a] writ of habeas corpus will be granted . . . only where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'" Mancuso v. Olivarez, 292 F.3d 939, 956 (9th Cir. 2002) (citation omitted). "Only if there are no permissible inferences the jury may draw from evidence can its admission violate due process." Alcala v. Woodford, 334 F.3d 862, 887 (9th Cir. 2003) (emphasis in original); Houston v. Roe, 177 F.3d 901, 910 n.6 (9th Cir. 1999). "Even then, the evidence must 'be of such quality as necessarily prevents a fair trial[,]'" Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991) (emphasis in original; citation omitted); Randolph v. People of the State of Cal., 380 F.3d 1133, 1147-48 (9th Cir. 2004), which can only occur if the admission of the evidence had a "'substantial

and injurious effect or influence in determining the jury's verdict.'" <u>Brecht</u>, 507 U.S. at 623 (1993) (citation omitted); <u>see also</u> <u>Plascencia v. Alameida</u>, 467 F.3d 1190, 1203 (9th Cir. 2006) ("[T]he admission of the challenged evidence did not violate Plascencia's due process rights" since "[e]ven if the admission of the [evidence] was improper, the error could not have had 'a substantial and injurious effect on the jury's verdict.'" (citation omitted)).

Here, "since evidence of [P]etitioner's gang membership was clearly relevant to the gang enhancement charge[s] against [P]etitioner, . . . [P]etitioner was not denied due process of law when evidence regarding his gang membership was admitted into evidence." <u>Ratliff</u>, 712 F. Supp. 2d at 1065; <u>see also</u> <u>United States v. Takahashi</u>, 205 F.3d 1161, 1164 (9th Cir. 2000) ("Evidence of gang affiliation is admissible when it is relevant to a material issue in the case."); <u>People v. Williams</u>, 170 Cal. App. 4th 587, 609 (2009) ("Gang evidence, including expert testimony, is relevant and admissible to prove the elements of the substantive gang crime and gang enhancements."); <u>Hernandez</u>, 33 Cal. 4th at 1049 ("Evidence of the defendant's gang affiliation — including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like — can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime.").

1   For all these reasons, the state court's rejection of Ground

2   Four was not contrary to, or an unreasonable application of,

3   clearly established federal law.

4

5   **D.  Petitioner Is Not Entitled To Habeas Relief On His**

6   **Impermissibly Suggestive Pretrial Identification Claim**

7

8   In Ground Five, Petitioner contends the use of an

9   impermissibly suggestive photographic identification procedure

10  denied him due process of law.  (SAP at 6, 16-33).

11

12  **1.  Background**

13

14  The robberies occurred on October 3, 2009.  (RT 1228-33, 1561,

15  1565-66, 1830-32, 1846, 2143).  On October 9, 2009, Detective

16  Aguirre interviewed Arturo Frias and showed him a six-pack

17  photographic lineup containing Petitioner's photograph.[26]  (RT

18  1851-52, 2183-84, 3006).  Before showing Arturo the photographic

19  lineup, Detective Aguirre read Arturo a standard admonition in

20  English and Spanish.[27]  (RT 3015-17).  On cross-examination,

21  _____

22  [26]  In addition to the six-pack photographic lineup containing
    Petitioner's picture, Detective Aguirre showed Arturo multiple six-
23  pack photographic lineups on November 5, 2009.  (RT 2183-87).  Any
    further reference to "the photographic lineup" refers to the
24  October 9, 2009, photographic lineup containing Petitioner's
    picture, which is the lineup relevant to Ground Five.
25
    [27]  While the photographic lineup, including the standard
26  admonition, was in evidence before the jury, it is not part of the
    record before this Court.  (RT 2183-84, 3904).  Similarly,
27  Detective Aguirre recorded the October 9, 2009 interview with
    Arturo, but it is not part of the record.  (RT 3033-34).  Therefore,
28  the Court is unaware of exactly what Detective Aguirre told

41

Detective Aguirre conceded that in addition to the admonition, he told Arturo that he was going to show him the driver.[28]  (RT 3018). After several minutes, Arturo picked out Petitioner's photograph from the lineup, identifying him as the green car's driver.[29]  (RT

_____

Petitioner.   However,  the  record  does  contain  an  admonition Detective Aguirre read to Mario Frias, which stated:

> You'll be asked to look at a group of photographs.  The
> fact that the photographs are shown to you should not
> influence your [judgment].  You should not conclude or
> guess that the photographs contain the picture of the
> person that committed the crime.  You are not obligated
> to identify anyone.   It is just as important to free
> innocent persons from suspicion as to identify guilty
> parties.   Please  do  not  discuss  the  case  with  other
> witnesses or indicate in any way that you have identified
> someone.  Do you understand that?

(CT 330; see also RT 1534-35).  Because Detective Aguirre indicated he read the admonition to Arturo from a form that is provided to investigators  before  they  show  six-pack  photographic  lineups  to witnesses and the same admonition is read in every case in which a witness is shown a photographic lineup (RT 2184, 2510-11), it is reasonable to assume that this is the admonition Detective Aguirre read Arturo, though this assumption has no bearing on the outcome of this case.

[28]   The following colloquy occurred between Petitioner's defense counsel ("DC") and Detective Aguirre ("Det."):

[DC]:      And specifically what you said to [Arturo] was, I'm
           going to show you, you know, some photographs.  And
           if you see him, tell me.  Okay.  Tell me which one
           it was.  Okay?  And no, no hurry.  Take your time.
           Well, you said that the – the fat one that was in
           the car, you didn't take a good look at him.  But
           I'm going to show him to you see anyone?
[Det.]:    Yes.
[DC]:      That's what you told him.  You told him you were
           going to show the driver to him, didn't you?
[Det.]:    Yes.

(RT 3018).

[29]   Arturo  initially  dismissed  four  of  the  six  photographs  and focused on the first two photos in the array.  (RT 3018).  Detective Aguirre then covered the four rejected photos and told Arturo to

1851-52, 2183-84, 3029-30).   At trial, Arturo also identified

Petitioner as the green car's driver.  (RT 1845-46).

### 2.   Analysis

"[C]onvictions based on eyewitness identification at trial
following a pretrial identification . . . will be set aside on that
ground only if the [pretrial] identification procedure was so
impermissibly suggestive as to give rise to a very substantial
likelihood of irreparable misidentification." Simmons v. United
States, 390 U.S. 377, 384 (1968); see also Perry v. New Hampshire,
565 U.S. 228, 238-39 (2012) ("[D]ue process concerns arise only
when law enforcement officers use an identification procedure that
is both suggestive and unnecessary.").  "It is the likelihood of
misidentification which violates a defendant's right to due
process. . . ." Neil v. Biggers, 409 U.S. 188, 198 (1972).  Thus,
to successfully challenge identification testimony, a defendant
must show that the government's pre-trial or in-court
identification procedures were so unnecessarily suggestive as to
give rise to a substantial likelihood of misidentification. Perry,
565 U.S. at 239; Biggers, 409 U.S. at 198.  Even if a pretrial
procedure is impermissibly suggestive, automatic exclusion of
identification testimony is not required. Perry, 565 U.S. at 239;
Manson v. Brathwaite, 432 U.S. 98, 114 (1977); Biggers, 409 U.S.
at 199.  Rather, the court must determine "whether under the
'totality of the circumstances' the identification was reliable

---

take his time and look at both of the remaining photos, which
Arturo did.  (RT 3018-21).

even though the confrontation procedure was suggestive." Biggers, 409 U.S. at 199; Perry, 565 U.S. at 239; Brathwaite, 432 U.S. at 114.   Five factors must be considered in determining whether in-court identification testimony is sufficiently reliable: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the pretrial identification; and (5) the length of time between the crime and the pretrial identification.   Perry, 565 U.S. at 239 n.5; Brathwaite, 432 U.S. at 114; Biggers, 409 U.S. at 199.

Petitioner "bears the burden of showing impermissible suggestiveness." Howard v. Bouchard, 405 F.3d 459, 469 (6th Cir. 2005); see also English v. Cody, 241 F.3d 1279, 1282 (10th Cir. 2001) ("In order to prevail on a claim of an unduly suggestive [identification procedure], a defendant has the initial burden of proving that the identification procedure was impermissibly suggestive." (citation omitted)).   Here, Petitioner does not contend there was any inherent deficiency in the photographic lineup Detective Aguirre showed to Arturo Frias.   Rather, Petitioner argues that the circumstances surrounding Detective Aguirre's presentation of the photographic lineup to Arturo rendered Arturo's pretrial identification of petitioner impermissibly suggestive.[30]   (SAP at 6, 16-33).   In particular,

---

[30]   The majority of Petitioner's claim focuses on perceived inconsistencies between the victims' descriptions of the perpetrators. (See SAP at 18-28).   But the relevant question here

44

Petitioner complains that: (1) "Detective Aguirre first show[ed] Arturo . . . photos of Petitioner taken from his home" as well as photos "taken of Petitioner after [he was interviewed] by police in the area where the crimes was committed"; (2) Arturo's pretrial identification of him was improperly tainted since Detective Aguirre placed Petitioner's photograph in the lineup only because Petitioner "had recently been [stopped and interviewed] by police near, or at the scene of the crime"; (3) Arturo's pretrial identification of him was impermissibly suggestive because Arturo has cognitive difficulties and the three other robbery victims were unable to identify Petitioner; and (4) Detective Aguirre informed Petitioner that the driver would be in the photographic lineup. (SAP at 6, 17-18, 28-29; Reply at 2, 12-13).

Petitioner has not met his burden of showing that the photographic lineup procedure was impermissibly suggestive. Petitioner's first assertion is unclear and unsupported by citation to any evidence in the record,[31] his second assertion is factually incorrect,[32] see Dows v. Wood, 211 F.3d 480, 486-87 (9th Cir. 2000)

is whether the photographic lineup shown to Arturo Frias was impermissibly suggestive.

[31] Neither Petitioner's SAP nor his Reply point to any evidence supporting this allegation, Petitioner cites to no evidence in the record indicating that Detective Aguirre showed Arturo any picture of Petitioner other than the photographic lineup, and the Court need not scour the state court record in search of possible support for Petitioner's argument. See Adams v. Armontrout, 897 F.2d 332, 333 (8th Cir. 1990) (Neither "[Section] 2254 [nor] the Section 2254 Rules require the federal courts to review the entire state court record of habeas corpus petitioners to ascertain whether facts exist which support relief.").

[32] As pretrial proceedings made clear, Detective Aguirre initially focused on Petitioner as a suspect based on "word on the street"

1  (factually unfounded argument provides no basis for federal habeas

2  relief), and both the first and second assertions are "cursory and

3  vague [and] cannot support habeas relief." Greenway v. Schriro,

4  653 F.3d 790, 804 (9th Cir. 2011); James v. Borg, 24 F.3d 20, 26

5  (9th Cir. 1994); see also Gustave v. United States, 627 F.2d 901,

6  904 (9th Cir. 1980) (affirming dismissal of claim challenging

7  allegedly suggestive display of photographs since it was "vague,

8  conclusory and without any facts alleged in support of the claim").

9  Similarly, with regard to Petitioner's third assertion, the trial

10  court found Arturo competent to testify (RT 1828-30), and

11  Petitioner does not explain how Arturo's cognitive difficulty made

12  the six-pack procedure impermissibly suggestive. Greenway, 653

13  F.3d at 804 (9th Cir. 2011); James, 24 F.3d at 26; Gustave, 627

14  F.2d at 904. Finally, a pretrial lineup is not impermissibly

15  suggestive merely because the witness knew the lineup included a

16  suspect as "it stands to reason that there is a suspect at the

17  lineup stage." United States v. Bowman, 215 F.3d 951, 966 (9th

18  Cir. 2000) (italics in original); see also Jenkins v. City of New

19  York, 478 F.3d 76, 93 (2d Cir. 2007) ("[A]lthough the police

20  generally should refrain from informing a witness that [a] suspect

21  is in [a] lineup, a lineup is not unduly suggestive merely because

22  they do so."); United States v. Carter, 756 F.2d 310, 313 (3d Cir.

23  1985) (While suggesting there is a suspect in the lineup the witness

24  is about to view "is dangerously suggestive when combined with a

25  one person show-up, this is not true in the case of a fair

26  lineup[.]" (citations omitted)); Gullick v. Perrin, 669 F.2d 1, 5

27  _____

28  information he received from a confidential informant rather than
    any prior stop of Petitioner. (See CT 160-82, 186-92; RT D7-D14).

n.9 (1st Cir. 1981) ("The mere holding of any lineup [is] likely to suggest to a witness that suspicion has focused on one or more of the participants - else why hold the lineup?"); United States v. Gambrill, 449 F.2d 1148, 1151 n.3 (D.C. Cir. 1971) ("It must be recognized . . . that any witness to a crime who is called upon to view a police lineup must realize that he would not be asked to view the lineup if there were not some person there whom the authorities suspected.  To ignore this fact is to underestimate average intelligence.  Thus, telling this to a witness may in many instances be relatively harmless."); Hodge v. Henderson, 761 F. Supp. 993, 1007-08 (S.D. N.Y. 1990) ("[I]t is implicit in the viewing of a lineup that a suspect might appear; this knowledge alone is insufficient to pose a substantial likelihood of misidentification."), affirmed by, 929 F.2d 61 (2d Cir. 1991) (per curiam).  Accordingly, Petitioner has not met his burden of showing that the photographic lineup was impermissibly suggestive, and he cannot establish a due process violation.  Perry, 565 U.S. at 238-39; see also United States v. Bagley, 772 F.2d 482, 492 (9th Cir. 1985) ("If we find that a challenged procedure is not impermissibly suggestive, our inquiry into the due process claim ends."). [33]

---

[33]  Having so concluded, the Court need not consider whether the evidence was reliable under the totality of the circumstances. See Bagley, 772 F.2d at 493 ("Having concluded that the one-on-one show-up was a legitimate identification procedure, we need not reach the question whether the teller's identification was reliable under the test enunciated in Biggers."); United States v. Davenport, 753 F.2d 1460, 1463 n.2 (9th Cir. 1985) ("Because we do not regard the confrontation procedures as unnecessarily suggestive, we need not consider the reliability of the identification in determining whether the procedures gave rise to a substantial likelihood of mistaken identification.").

1    Where, as here, "the procedure employed does not give rise to
2    'a very substantial likelihood of irreparable misidentification,'
3    identification evidence is for the jury to weigh." United States
4    v. Kessler, 692 F.2d 584, 587 (9th Cir. 1982) (citation omitted);
5    United States v. Jones, 84 F.3d 1206, 1210 (9th Cir. 1996).  Here,
6    the reliability of Arturo Frias's identification of Petitioner and
7    his co-defendants was thoroughly explored through the cross-
8    examination of Arturo Frias and Detective Aguirre as well as
9    through the defendants' use of expert testimony.  (See, e.g., RT
10   1857-1903, 2103-19, 2438-71, 2496-2511, 2702-26, 2755-61, 2764-
11   2825, 3002-26, 3035-38, 3947-89, 3991-4007).   Under these
12   circumstances, Petitioner has not demonstrated that he was denied
13   due process of law when the trial court allowed the jury to evaluate
14   the identification evidence.  See Brathwaite, 432 U.S. at 116
15   (Short of "'a very substantial likelihood of irreparable
16   misidentification'" identification "evidence is for the jury to
17   weigh.  We are content to rely upon the good sense and judgment of
18   American juries, for evidence with some element of
19   untrustworthiness is customary grist for the jury mill.  Juries
20   are not so susceptible that they cannot measure intelligently the
21   weight of identification testimony that has some questionable
22   feature." (citation omitted)); Simmons, 390 U.S. at 384 ("The
23   danger that use of [photographic identification] technique[s] may
24   result in convictions based on misidentification may be
25   substantially lessened by a course of cross-examination at trial
26   which exposes to the jury the method's potential for error.");
27   Richardson v. Runnels, 318 F. App'x 492, 493 (9th Cir. 2008) (Since
28   defense "counsel was given every opportunity to challenge the

1  identification evidence" and "was fully able to argue that
2  suggestive police procedures led to an inaccurate identification,
3  . . . [t]he trial court's decision to leave the ultimate question
4  of the identification's reliability to the jury" raised "no
5  constitutional claim).

6

7  **E.   Petitioner Is Not Entitled To Habeas Relief On His Ineffective**
8       **Assistance of Counsel Claims**

9

10      In Ground Six, Petitioner contends he received ineffective
11  assistance of counsel when defense counsel failed to object to
12  Detective Aguirre's hearsay testimony as violating Petitioner's
13  right to confront the witnesses against him and failed to object
14  to the unduly suggestive identification of Petitioner, as set forth
15  in Grounds Four and Five. (SAP at 33). In Ground Seven, Petitioner
16  alleges he received ineffective assistance when appellate counsel
17  did not raise Grounds Four through Six on appeal. (Id.). The
18  Superior Court concluded that "counsel provided effective
19  assistance at trial[,]" but did not address Petitioner's
20  ineffective assistance of appellate counsel claim. (Dkt. No. 34-
21  1 at 39).

22

23      "The Sixth Amendment guarantees criminal defendants the
24  effective assistance of counsel." Yarborough v. Gentry, 540 U.S.
25  1, 4 (2003) (per curiam); see also Missouri v. Frye, 566 U.S. 133,
26  138 (2012) ("The right to counsel is the right to effective
27  assistance of counsel."). To succeed on an ineffective assistance
28  of trial counsel claim, Petitioner must demonstrate both that

counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Pinholster, 563 U.S. at 189 (Strickland standard is clearly established federal law). "'To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" Richter, 562 U.S. at 104 (citation omitted); Premo v. Moore, 562 U.S. 115, 121 (2011). Prejudice "focuses on the question whether counsel's deficient performance renders the results of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993); Williams v. Taylor, 529 U.S. 362, 393 n.17 (2000). That is, Petitioner must establish there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" Strickland, 466 U.S. at 694; Pinholster, 563 U.S. at 189, and "[t]he likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112; Pinholster, 563 U.S. at 189. Petitioner bears the burden of establishing both components. Williams, 529 U.S. at 390-91; Strickland, 466 U.S. at 687. However, the Court need not determine whether counsel's performance was deficient before examining the prejudice the alleged deficiencies caused Petitioner. See Smith v. Robbins, 528 U.S. 259, 286 n.14 (2000) ("'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.'" (quoting Strickland, 466 U.S. at 697)).

"[T]he right to effective assistance of counsel is not confined to trial, but extends also to the first appeal as of right." Kimmelman v. Morrison, 477 U.S. 365, 378 n.2 (1986); Evitts v. Lucey, 469 U.S. 387, 396-97 (1985). The standard for establishing a prima facie claim of ineffective appellate counsel is the same as for trial counsel: Petitioner must show his appellate counsel was deficient and the deficient performance prejudiced him. Robbins, 528 U.S. at 285, 289; Strickland, 466 U.S. at 687; Cockett v. Ray, 333 F.3d 938, 944 (9th Cir. 2003). Moreover, appellate counsel has no constitutional duty to raise every issue, where, in the attorney's judgment, the issue has little or no likelihood of success. Jones v. Barnes, 463 U.S. 745, 751-53 (1983); Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002). Indeed, as an officer of the court, appellate counsel is under an ethical obligation to refrain from wasting the court's time on meritless arguments. McCoy v. Wisconsin, 486 U.S. 429, 436 (1988). Thus, in reviewing appellate counsel's performance, the court will presume that appellate counsel used reasonable tactics; otherwise, it "could dampen the ardor and impair [counsel's] independence. . . , discourage the acceptance of assigned cases, and undermine the trust between attorney and client." Pollard v. White, 119 F.3d 1430, 1435 (9th Cir. 1997) (citing Strickland, 466 U.S. at 690).

Here, because Petitioner's ineffective assistance of trial counsel claims relate to claims that have been found meritless, Petitioner cannot demonstrate his trial counsel was ineffective. See Flournoy v. Small, 681 F.3d 1000, 1006 (9th Cir. 2012) ("The failure to make an objection that would have been overruled was

not deficient performance."); <u>Sexton v. Cozner</u>, 679 F.3d 1150, 1157 (9th Cir. 2012) ("Counsel is not necessarily ineffective for failing to raise even a nonfrivolous claim, so clearly we cannot hold counsel ineffective for failing to raise a claim that is meritless." (citation omitted)).  Nor can Petitioner prove his appellate counsel rendered ineffective assistance in failing to raise Grounds Four through Six on appeal.  <u>See</u> <u>Rogovich v. Ryan</u>, 694 F.3d 1094, 1106 (9th Cir. 2012) ("Counsel is not required to raise an 'untenable issue' on appeal." (citations omitted)); <u>Moorman v. Ryan</u>, 628 F.3d 1102, 1107 (9th Cir. 2010) ("If trial counsel's performance was not objectively unreasonable or did not prejudice Moormann, then appellate counsel did not act unreasonably in failing to raise a meritless claim of ineffective assistance of counsel, and Moormann was not prejudiced by appellate counsel's omission."); <u>Wildman v. Johnson</u>, 261 F.3d 832, 840 (9th Cir. 2001) ("[Petitioner] cannot sustain his claim for ineffective assistance of appellate counsel because the issues he raises are without merit").

     Accordingly, the state court's rejection of Grounds Six and Seven was neither contrary to, nor an unreasonable application of, clearly established federal law.

\\
\\
\\
\\

VII.

CONCLUSION


     For the foregoing reasons, the Petition for Writ of Habeas Corpus is DENIED and Judgment shall be entered dismissing this action with prejudice.


DATED:  March 24, 2017


                                        /S/
                              _____
                              SUZANNE H. SEGAL
                              UNITED STATES MAGISTRATE JUDGE